UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SHELDA RAY,

                Plaintiff,                              **MEMORANDUM AND ORDER**
                                                                    13-CV-6416 (RRM) (CLP)
       - against -

BRIAN WEIT, et al,

                Defendants.

-------------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff Shelda Ray, proceeding *pro se* and *in forma pauperis*, commenced this action on November 14, 2013, alleging discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Americans with Disabilities Act of 1990, 34 U.S.C. § 12112 *et seq.* (the "ADA"), against defendants the New York City Department of Education ("DOE") and Assistant Principal Brian Weit.[1] Currently before the Court is the defendants' motion to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (Defs.' Mot. Dismiss (Doc. No. 18).)

      For the reasons below, defendants' motion is granted, and plaintiff is granted leave to file an amended complaint.

---

[1] Although plaintiff did not check the "Americans with Disabilities Act" line on page one of her complaint, she alleges elsewhere in her pleadings that defendants discriminated against her based on her alleged disabilities. Because *pro se* pleadings are "to be liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Court reads the complaint as including a complaint under the ADA. *Cf. Edwards v. Elmhurst Hosp. Ctr.*, No. 11-CV-4693 (RRM) (LB), 2013 WL 839535, at *1 n.2 (E.D.N.Y. Feb. 15, 2013) (considering Title VII claim where corresponding box on *pro se* form not checked but complaint alleged religious discrimination), *adopted by* 2013 WL 828667 (Mar. 6, 2013); *Smith v. Mabstoa/NYCTA*, No. 02-CV-220 (PKC), 2005 WL 1123730, at *6 n.1 (S.D.N.Y. May 11, 2005) (considering Age Discrimination in Employment Act claim where corresponding box on *pro se* form not checked but complaint alleged age discrimination).

## BACKGROUND[2]

Briefly stated, and as alleged, Ray was employed for twenty-five years by the DOE as a non-pedagogical family paraprofessional, until her termination sometime around June 2013.[3] (Compl. (Doc. No. 1) at 4A.) Ray was "the only African American, female family Para with 24 years of service in [her] building who was also a Shop Steward." (Pl.'s Opp'n (Doc. No. 18-5) at 4 (ECF pagination).) She identifies her disabilities as "vision, feet and asthma." (Compl. at 3.) During part or all of her tenure with the DOE, Ray worked at the Brooklyn High School of the Arts[4] ("BHSA"), where she was supervised by Weit for the three years preceding her termination. (Compl. at 4A.)

Ray suffers from "health issues and transportation problems." (*Id.*) Weit was aware that these caused Ray to be late for work, yet "chose to ignore them." (*Id.*) Ray has witnessed other employees arrive late to work, and no other employee of her building has ever been suspended without pay. (*Id.*) On February 6, 2013, Weit gave Ray a suspension letter "in front of security with no privacy, meeting or warning," suspending her without pay. (*Id.*) Weit justified the suspension citing "Chancellors regulation #C-601 for pedagogical personnel," but non-

---

[2] For the purposes of Rule 12(b)(6) review, the Court takes all factual allegations in Ray's complaint as true and draws all reasonable inferences in her favor. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). In addition to the complaint itself, the Court considers the documents attached to the complaint as well as those incorporated by reference therein. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (finding that courts may consider on a motion to dismiss any "written instrument attached to [the complaint] as an exhibit," any "statements or documents incorporated in it by reference" or any document "integral to the complaint" because it "relies heavily upon its terms and effect" (quotation marks omitted)). Furthermore, although in general a court may not consider material outside the pleadings when reviewing a Rule 12(b)(6) motion, in light of the mandate to construe a *pro se* plaintiff's papers liberally, the Court considers factual allegations contained in Ray's opposition papers, to the extent they are consistent with the allegations in her complaint. *See Richardson v. Dep't. of Corr.*, No. 10-CV-6137 (SAS), 2011 WL 710617, at *3 n.46 (S.D.N.Y. Feb. 28, 2011) (quoting *Burgess v. Goord*, No. 98-CV-2077 (SAS), 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan. 28, 1999)); *Agu v. Rhea*, No. 09-CV-4732 (JS) (AKT), 2010 WL 5186839, at *1 n.2 (E.D.N.Y. Dec. 15, 2010) (turning to facts contained in plaintiff's opposition papers where *pro se* plaintiff's complaint contained few decipherable facts).
[3] Ray's complaint indicates that she was terminated four months after an incident dated February 6, 2013. Defendants' memorandum in support of their motion to dismiss places that date at June 23, 2013, which is four months and seventeen days after February 6, 2013. (*See* Defs.' Mem. Supp. Mot. Dismiss (Doc. No. 18-1).)
[4] The full name of the school appears in Ray's letter, filed on March 3, 2014. (Pl.'s Apr. 28, 2014 Letter (Doc. No. 11).).

pedagogical personnel "have [their] own rules for lateness." (*Id.*) Ray accuses Weit of "continually condemning, harassing and discriminating against [her] on a personal level . . . caus[ing] a lot of emotional, financial and personal issues . . . ." (*Id.*)

According to Ray's opposition to the instant motion to dismiss, (Pl.'s Opp'n at 5 (ECF pagination).), Ray's locker was removed and placed in the basement, "as far from [her] as possible." The area was cold and damp, which Ray believed would aggravate her asthma, and Ray believed that the "lighting situation" would cause problems with her vision. (*Id.*) Ray spoke to Weit about her "locker not [being] available to [her] on several occasions," but Weit never attempted to resolve her concerns. (*Id.*)

Ray filed a charge with the Equal Employment Opportunity Commission (the "EEOC") regarding defendants' alleged discriminatory conduct, on June 25, 2013. (Compl. at 4.) On August 13, 2013, the EEOC issued Ray a Dismissal and Notice of Rights letter indicating its determination that, based upon its investigation, it was unable to conclude that the information obtained established a violation of the statutes. (*Id.* at 7). Ray received this letter on August 17, 2014. (*Id.* at 5.) Ray filed the instant action on November 14, 2013 using a form *pro se* complaint. (*See generally*, *id.*)

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) requires the court to examine the legal, rather than factual, sufficiency of a complaint. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). As required by Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To withstand a motion to dismiss, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court considering a Rule 12(b)(6) motion must "take[ ] factual allegations [in the complaint] to be true and draw[ ] all reasonable inferences in the plaintiff's favor." *Harris*, 572 F.3d at 71 (citation omitted). A complaint need not contain "detailed factual allegations," but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, the plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The determination of whether "a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007)).

This plausibility standard applies to discrimination claims under both Title VII, *see Twombly*, 550 U.S. at 569–70 (discussing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508–14 (2002)), and the ADA, *see Sanzo v. Uniondale Union Free Sch. Dist.*, 225 F. Supp. 2d 266, 269 (E.D.N.Y. 2002). Although "a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a *prima facie* case of discrimination . . . the elements of

a *prima facie* case provide an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible." *See Shallow v. Scofield*, No. 11-CV-6028 (JMF), 2012 WL 4327388, at *3 (S.D.N.Y. Sept. 21, 2012) (internal quotation marks and alternations omitted). Accordingly, "courts consider these elements in determining whether there is sufficient factual matter in the complaint which, if true, gives Defendant fair notice of Plaintiff's claim and the grounds on which it rests." *Murphy v. Suffolk Cnty. Cmty. Coll.*, No. 10-CV-0251, 2011 WL 5976082, at *5 (E.D.N.Y. Nov. 29, 2011) (citing *Sommersett v. City of New York*, No. 09-CV-5916, 2011 WL 256301, at *5 (S.D.N.Y. June 28, 2011)).

"Although a *pro se* plaintiff must satisfy pleading requirements, the Court is 'obligated to construe a *pro se* complaint liberally.'" *Malachi v. Postgraduate Ctr. for Mental Health*, No. 10-CV-3527 (RRM) (LB), 2013 WL 782614, at *1 (E.D.N.Y. Mar. 1, 2013) (quoting *Harris*, 572 F.3d at 71–72). In other words, the Court holds *pro se* pleadings to a less exacting standard than complaints drafted by attorneys, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and reads such pleadings to "raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (citations omitted). Nevertheless, the Court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist," *Molina v. New York*, 956 F. Supp. 257, 259 (E.D.N.Y. 1995), and "[w]hen a *pro se* plaintiff has altogether failed to satisfy a pleading requirement, the Court must dismiss the claim." *Malachi*, 2013 WL 782614, at *1 (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

## DISCUSSION

### I. Title VII Discrimination Claims

Title VII makes it an "unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Although a plaintiff is not required to make out a *prima facie* case of Title VII discrimination to defeat a motion to dismiss, the elements of a *prima facie* case are instructive. *Shallow*, 2012 WL 4327388, at *3. Those elements are that the plaintiff "(1) is a member of a protected class; (2) was qualified for the position [s]he held; and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination." *See James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 308 (E.D.N.Y. 2012) (citing *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 (2d Cir. 2000)).

"It is axiomatic that mistreatment at work is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic." *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)). Therefore, even taking into account the liberal pleading standard in employment discrimination claims, a complaint must still "allege the essential elements of an employment discrimination claim, including discrimination on the basis of protected status." *Perry v. State of New York Dep't of Labor*, No. 08-CV-4610 (PKC), 2009 WL 2575713, at *2 (S.D.N.Y. Aug. 20, 2009). Here, Ray has failed to do so.

Ray's complaint is sufficient to enable the Court to infer the first three elements. Her complaint indicates that she is an African American female and the fact that she is qualified is uncontested. She has also alleged materially adverse employment actions by claiming unequal terms and conditions of employment, suspension and termination.[5] (*See* Compl. at 3.) These actions qualify as adverse employment actions, as set forth in *Feingold v. New York*, where the Second Circuit stated that "[e]xamples of materially adverse employment actions include

---

[5] Although Ray failed to check the box for "termination" under the discriminatory conduct section on page three of her form *pro se* complaint, she alleges elsewhere in her complaint that her termination was "another form of discrimination and harassment." (Compl. at 4A.)

termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." 366 F.3d 138, 152 (2d Cir. 2004). However, Ray's complaint fails to allege facts sufficient to infer the fourth element insofar as Ray has not alleged anything to indicate, other than to have invoked Title VII, that this treatment was *because* she was an African American or female. *See Patane*, 508 F.3d at 112.

Ray states, "I have witness other employees come late including Mr. Weit and no other personnel with my title, in my union or other employees of that building has ever been suspended without pay, booted out of the department of education and not get paid for a month." (Compl. at 4A.) Ray does not identify the race or gender of any employees who were not suspended, nor does she allege that the conduct of any of the other employees was as serious as hers was. *See Risco v. McHugh*, 868 F. Supp. 2d 75, 100 (S.D.N.Y. 2012) ("In addition to identifying similarly situated employees who are subject to the same performance evaluation and discipline standards, a plaintiff must also show that those employees engaged in acts of comparable seriousness but were not punished as severely as plaintiff."). Nor does she point to any indications of racial or gender based "discriminatory animus." *See Patane*, 508 F.3d at 112. As the Second Circuit has noted, "[e]veryone can be characterized by sex, race, ethnicity, or (real or perceived) disability." *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002). Relying on such characterization alone to draw the inference of discrimination would beg the question of whether any adverse employment action was *because* of the characterization. *Cf. id.* ("It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination."). Ray's complaint, which contains no allegation linking her treatment to her race or gender, does no more than

7

simply accommodate a sheer possibility that defendants violated Title VII. It does not, as is required to withstand a motion to dismiss, provide defendants with fair notice of the grounds upon which Ray's claim rests, and therefore does not overcome the plausibility standard as required under *Iqbal*.[6] 556 U.S. at 698; *see also Murphy*, 2011 WL 5976082, at *5.

## II. Americans With Disabilities Act Discrimination Claims

The ADA provides that no covered entity "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). It also defines "discriminate" to include failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business." *Id.* § 12112(b)(5)(A). Ray has alleged discrimination in her suspension, discharge and treatment as well as failure to accommodate her disability.

### A. Suspension, Termination and Unequal Terms of Employment

To make out a *prima facie* case of discrimination under the ADA, a plaintiff must show that "(1) [her] employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [s]he suffered adverse employment action because

---

[6] Ray's complaint itself undermines any argument that her suspension or termination was the result of racial or gender discrimination by conceding her regular lateness and referencing the progressive nature of the discipline she received for such lateness. (*See* Compl. at 4A.) Moreover, plaintiff's opposition to the motion to dismiss includes voluminous correspondence between Ray and Weit which, rather than support any inference that Ray was singled out for any reason, let alone by reason of race or gender, if anything suggests communication problems between them and highlights Weit's view that Ray was frequently insubordinate. (*See generally* Pl.'s Opp'n.)

8

of [her] disability." *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006)).

Ray's complaint is sufficient to enable the court to infer, at this stage, some of the necessary elements of a Title VII discrimination claim. The parties do not dispute, at this stage, that the DOE is subject to the ADA. Nor do defendants contest whether Ray was qualified to perform the essential functions of her job, with or without a reasonable accommodation. As discussed above, Ray has pleaded an adverse employment action. *See Feingold*, 366 F.3d at 152. However, Ray's pleads do not enable the court to infer that she is disabled within the meaning of the ADA, nor that she was terminated, suspended or subjected to unequal treatment *because* she was disabled.

A "disability" under the ADA is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Major life activities" include, but are not limited to:

> caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working . . . [as well as] the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

*Id.* § 12102(2). In determining whether an impairment "substantially limits" a major life activity, the Second Circuit looks to EEOC regulations. *See, e.g.*, *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998); *Delgado v. Triborough Bridge & Tunnel Auth.*, 485 F. Supp. 2d 453, 459–60 (S.D.N.Y. 2007). Under EEOC regulations, an impairment meets this standard if it "substantially limits the ability of an individual to perform a major life activity as compared

9

to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). The regulations further counsel that in determining whether an impairment substantially limits a major life activity:

> (i) . . . [i]t may be useful in appropriate cases to consider, as compared to most people in the general population, the condition under which the individual performs the major life activity; the manner in which the individual performs the major life activity; and/or the duration of time it takes the individual to perform the major life activity, or for which the individual can perform the major life activity.
>
> (ii) Consideration of facts such as condition, manner, or duration may include, among other things, consideration of the difficulty, effort, or time required to perform a major life activity; pain experienced when performing a major life activity; the length of time a major life activity can be performed; and/or the way an impairment affects the operation of a major bodily function. In addition, the non-ameliorative effects of mitigating measures, such as negative side effects of medication or burdens associated with following a particular treatment regimen, may be considered when determining whether an individual's impairment substantially limits a major life activity.

29 C.F.R. § 1630.2(4).[7]

Ray's complaint identifies "vision, feet and asthma" as her disabilities. (Compl. at 3.) Ray's complaint further states that her "health issues and transportation problems" cause her lateness. (Compl. at 4A.) Ray's opposition papers also include four doctors' notes. (Pl.'s Opp'n at 19–22 (ECF pagination).) With regard to Ray's asserted disabilities, in their totality these notes indicate that Ray was under the care of a podiatrist in March 2009 who directed her not to attend work or school for three days, and that she received three eye examinations between May and June of 2007, one of which included dilation and resulted in a note indicating that she would return to work the following day. (*See id.*) Although the conditions Ray mentions affect "seeing," "walking," and "breathing," Ray has not alleged facts regarding the manner or duration of her alleged conditions to indicate that they restrict any major life activity to the extent required

---

[7] The actual text of the regulations has changed since *Ryan* and *Delgado*, following the passage of the Americans With Disabilities Act Amendments Act of 2008 ("ADAAA") "to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied prior to the ADAAA." 29 C.F.R. § 1630.2(j)(1)(iv). The most current versions of the regulations, effective April 4, 2012, are used herein.

under the ADA beyond her assertions that they contribute to her lateness along with her "transportation problems," which she does not define. Ray's pleading are not sufficient to give rise to a plausible ADA claim. *See Iqbal*, 556 U.S. at 698. Equally important, as with her claims of race and gender discrimination, Ray has failed to allege any basis to infer that she was treated differently *because* of her disability. Ray's claim fails to set forth a sufficient causal connection between her disability and any adverse employment action. *See id.*

### B. Failure to Accommodate Under the ADA

For similar reasons, Ray has also failed to allege sufficient facts to support a claim for denial of a reasonable accommodation. Under the ADA, failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business," may also constitute discrimination. 42 U.S.C. § 12112(b)(5)(A). To sustain such a claim, a plaintiff must establish that:

> (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*McMillan*, 711 F.3d at 125–26 (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)). As discussed above, Ray has not alleged a disability that gives rise to a claim within the meaning of the ADA, and as such, this claim fails.

### III. Leave to Amend

Federal Rule of Civil Procedure 15(a) contemplates that courts should "freely give leave [to amend] when justice so requires." Where a cause of action is dismissed due to deficient pleading, leave to amend should generally be granted. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Petrone v. Hampton Bays Union Free Sch. Dist.*, No. 03–CIV–4359 (SLT) (ARL), 2009

11

WL 2905778, at *15–16 (E.D.N.Y. Sept. 10, 2009). This is especially true where, as here, a litigant proceeds *pro se*. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Marcelin v. Cortes–Vazquez*, No. 09–CIV–4303 (RRM) (JMA), 2011 WL 346682, at *2 (E.D.N.Y. Jan. 28, 2011) ("The standard governing leave to amend, flexible to begin with, is further liberalized for *pro se* plaintiffs.").

Therefore, plaintiff is granted leave to amend her complaint if she is able to state a valid cause of action under Title VII, the ADA or both. Any such amendment must be filed within thirty (30) days of the date of this Memorandum and Order. No extensions to this deadline will be granted absent extraordinary circumstances. Any amended complaint must be clearly marked "Amended Complaint" and bear docket number 13-CV-6416. Failure to timey amend pursuant to this order will result in dismissal of this action.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss, (Doc. No. 18), is GRANTED, and Ray's complaint is dismissed in its entirety. Plaintiff is granted leave to amend within thirty (30) days of the date of this Memorandum and Order. The Clerk of Court is directed to mail a copy of this Memorandum and Order to *pro se* plaintiff and to note the mailing on the docket.

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York
      March 20, 2015

———————————————
ROSLYNN R. MAUSKOPF
United States District Judge

12