UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SHELDA RAY,

                Plaintiff,

      - against -

BRIAN WEIT and THE NEW YORK CITY
DEPARTMENT OF EDUCATION,

                Defendants.

------------------------------------------------------------X

**MEMORANDUM AND ORDER**
13-CV-6416 (RRM) (CLP)

ROSLYNN R. MAUSKOPF, United States District Judge.

Plaintiff Shelda Ray, proceeding *pro se* and *in forma pauperis*, commenced this action on November 14, 2013, alleging race and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and violations of the Americans with Disabilities Act of 1990, 34 U.S.C. § 12112 *et seq.* (the "ADA"), against defendants the New York City Department of Education ("DOE") and Assistant Principal Brian Weit. By an Order filed on March 20, 2015, this Court found that Ray had failed to state a claim under either of the two statutes and granted leave to file an amended complaint. (Doc. No. 20.) On April 16, 2015, Ray filed an amended complaint, alleging race, gender, and disability discrimination as well as failure to accommodate. (Am. Compl. (Doc. No. 21).) Defendants now move to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mot. Dismiss. (Doc. No. 30).) Ray opposes the motion. (Pl.'s Opp'n (Doc No. 30-4).) For the reasons set forth below, defendants' motion is granted.

# BACKGROUND[1]

Briefly stated, and as alleged in her amended complaint, Ray is an "African-American woman" who suffers from "vision, asthma, [and] foot problems." (Am. Compl. at 3; 6, ¶ 7.) Ray was employed for twenty-five years by the DOE as a non-pedagogical family paraprofessional, until her termination in June 2013. (*Id.* at 5, ¶¶ 1, 3.) During part or all of her tenure with the DOE, Ray worked at the Brooklyn High School of the Arts ("BHSA"), where she was supervised by Weit for the three years preceding her termination. (*Id.* at 5, ¶ 2; Defs.' Mem. in Supp. Mot. to Dismiss (Doc. No. 30-1) at 2.)

Ray alleges she is disabled by her "vision, asthma, [and] foot problems." (Am. Compl. at 3.) According to Ray, defendants were aware that Ray's vision problem caused her to be late for work, yet "failed to provide her with reasonable accommodation." (*Id.* at 7, ¶ 27.) Ray alleges that she "suffered from foot problems that made walking, climbing stairs, and prolonged standing more difficult, during the time at issue in this action" and that defendants "assigned her to work in a location that required her to go up and down stairs but refused her a keycard for the elevator." (*Id.* at 7, ¶¶ 24, 26.) Ray also alleges that defendants "assigned [her] to work in a cold, damp hallway that aggravated her asthma." (*Id.* at 7, ¶ 26.) Ray claims that "Weit harassed, demeaned and put [her] in medical peril" but "did not treat other employees . . . in this derogatory manner." (*Id.* at 6, ¶¶ 10, 15.)

---

[1] For the purposes of Rule 12(b)(6) review, the Court takes all factual allegations in Ray's amended complaint as true and draws all reasonable inferences in her favor. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). In addition to the amended complaint itself, the Court considers the documents incorporated by reference therein. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (finding that courts may consider on a motion to dismiss any "written instrument attached to [the complaint] as an exhibit," any "statements or documents incorporated in it by reference" or any document "integral to the complaint" because it "relies heavily upon its terms and effect" (internal quotation marks omitted)). Furthermore, although in general a court may not consider material outside the pleadings when reviewing a Rule 12(b)(6) motion, in light of the mandate to construe a *pro se* plaintiff's papers liberally, the Court considers factual allegations contained in Ray's opposition papers, to the extent they are consistent with the allegations in her amended complaint. *See Richardson v. Dep't. of Corr.*, No. 10-CV-6137, 2011 WL 710617, at *3 n.46 (S.D.N.Y. Feb. 28, 2011); *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *1 n.2 (E.D.N.Y. Dec. 15, 2010) (turning to facts contained in plaintiff's opposition papers where *pro se* plaintiff's complaint contained few decipherable facts).

In the school year before her termination, between September 5, 2012 and June 24, 2013, Ray was late to work fifty-six times. (Termination Letter (Doc. No. 30-2) at 4–6 (ECF Pagination).) On more than one occasion, Ray met with Weit, among others, to discuss her accumulated absences and record of lateness. (*Id.* at 4 (ECF Pagination).) Because of these absences, Ray was suspended without pay from February 12 through February 14, 2013.[2] (Am. Coml. at 6, ¶¶ 6m–n; 4/22/13 Grievance Form (Doc. No. 30-2) at 9.) Following her suspension and reinstatement in February, Ray continued to arrive late until her termination on June 26, 2013. (Termination Letter at 4–5 (ECF Pagination).)

In addition to her allegations of disability discrimination, Ray alleges several other "adverse employment actions" throughout her tenure. (Am. Compl. at 5–6.) Ray alleges that "all of the other Dean and DC37 members" received computers and laptops whereas school officials denied her requests. (Am. Compl. at 5, ¶6h.) Ray also alleges that she was excluded from "relevant meetings," denied a key to the bathroom, treated with a "derogatory attitude," suspended without pay, and terminated. (*Id.* at 5–6, ¶¶ 6h–I, k–o.) Ray claims she was "disrespected and singled out . . . for harsh treatment because [she is] African American." (*Id.* at 6, ¶ 16.) In her opposition papers, Ray connects all of these actions and alleges that Weit had a premediated plan to have her fired. (Pl.'s Opp'n at 4 (ECF Pagination).)

On June 25, 2013, Ray filed a charge with the Equal Employment Opportunity Commission (the "EEOC"). (*Id.* at 4.) This was just one day before BHSA terminated Ray's employment. (*Id.*; Termination Letter.) On August 13, 2013, the EEOC issued a Dismissal and Notice of Rights letter indicating its determination that, based upon its investigation, it was

---

[2] Ray contested her suspension internally on the grounds that she was not subject to the rules governing lateness that she was found to have violated. (4/22/13 Grievance Form at 9 (ECF Pagination).)

unable to conclude that the information submitted established any violation. (Am. Compl. at 10 (ECF Pagination).) Ray filed the instant action on November 14, 2013.

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the Court to examine the legal, rather than factual, sufficiency of a complaint. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). As required by Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court considering a Rule 12(b)(6) motion must "take[ ] factual allegations [in the complaint] to be true and draw[ ] all reasonable inferences in the plaintiff's favor." *Harris*, 572 F.3d at 71 (citation omitted). A complaint need not contain "detailed factual allegations," but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The determination of whether "a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007)).

"Although a *pro se* plaintiff must satisfy pleading requirements, the Court is 'obligated to construe a *pro se* complaint liberally.'" *Malachi v. Postgraduate Ctr. for Mental Health*, No. 10-CV-3527, 2013 WL 782614, at *1 (E.D.N.Y. Mar. 1, 2013) (quoting *Harris*, 572 F.3d at 71–72). Nevertheless, the Court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist," *Molina v. New York*, 956 F. Supp. 257, 259 (E.D.N.Y. 1995), and "[w]hen a *pro se* plaintiff has altogether failed to satisfy a pleading requirement, the Court must dismiss the claim." *Malachi*, 2013 WL 782614, at *1 (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

## DISCUSSION

### I. Gender Discrimination and Retaliation Claims

As an initial matter, Ray's gender discrimination and retaliation claims fail to comply with Federal Rule of Civil Procedure ("Rule") 8 and to state a claim pursuant to Rule 12(b)(6). As explained above, Rule 8 requires a plaintiff to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Ray has not met this standard in connection with her gender discrimination and retaliation claims.

In her amended complaint, Ray checks boxes indicating that she is alleging discrimination based on race, gender, and disability. (Am. Compl. at 3, ¶ 7) However, she divides her allegations by claim in the body of her amended complaint, and includes only race discrimination, disability discrimination, and failure to accommodate a disability. (*Id.* at 5–8.) Ray pleads no factual allegations in relation to her gender.

Similarly, in the amended complaint, Ray checks a box indicating that she is bringing a claim for retaliation. (Am. Compl. at 3, ¶ 4.) However, the body of Ray's amended complaint contains no allegations of retaliation. While there is a close temporal relationship between Ray's

termination on June 26, 2013 and the filing of her EEOC charge on June 25, 2013, Ray simply never alleges a causal connection or that defendants were even aware of her EEOC filing. *See Edwards v. Elmhurst Hosp. Ctr.*, No. 11-CV-5348, 2013 WL 839554, at *6 (E.D.N.Y. Feb. 4, 2013) *report and recommendation adopted,* 2013 WL 831162 (E.D.N.Y. Mar. 6, 2013) (dismissing retaliation claim where plaintiff "fail[ed] to include any allegations whatsoever to infer a causal nexus between his complaints of discrimination and the alleged adverse action"); *Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 133–34 (S.D.N.Y. 2012) (granting motion to dismiss where plaintiff did not allege any specific facts that could give rise to a plausible inference that defendant's motive was retaliatory and only suggested that the court should infer retaliatory motive because defendant's adverse action occurred later in time than his EEOC complaint); *see also Khaleel v. Metro One Loss Prevention Servs. Groups*, 469 F. Supp. 2d 130, 133 (S.D.N.Y. 2007) (dismissing retaliation claim based on filing of EEOC charge where "[n]owhere in the complaint or in Khaleel's opposition to the [motion to dismiss] is there any allegation that he provided [defendant] with a copy of his EEOC charge, or that [defendant] otherwise had any notice about Khaleel's EEOC filing prior to his dismissal"). Moreover, Ray's termination was proceeded by progressive discipline, including a suspension based on Ray's pattern of tardiness. *See Bazile v. City of New York*, 215 F. Supp. 2d 354, 388 (S.D.N.Y. Aug. 2, 2002) (dismissing retaliation claim where plaintiff was subjected to discipline before purported activity took place).

Because Ray fails to allege any factual basis for a facially plausible claim for relief, her gender discrimination and retaliation claims are dismissed. *See* Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 12(b)(6); *Ashcroft*, 556 U.S. at 678.

## II. Title VII Discrimination Claims

Title VII makes it an "unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). To defeat a motion to dismiss in a Title VII discrimination case, "a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). In regards to the second prong, a plaintiff may "alleg[e] facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* (internal citation omitted).

### a. Adverse Employment Actions

Ray has alleged multiple adverse employment actions.[3] In relation to her claims of race discrimination, she alleges that she was "assigned to [] hazardous and undesirable work assignments, suspen[ded]" without pay, and ultimately terminated. (Am. Compl. at 6, ¶ 9.) These allegations are sufficient to plead an adverse employment action. *See Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004) ("Examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.").

### b. Similarly Situated Employees

---

[3] Ray filed her charge with the EEOC on June 25, 2013, thus any adverse employment action that occurred before August 29, 2012 (i.e., 300 days before June 25, 2013) must be dismissed as time barred. 42 U.S.C. §2000e-5(e)(1) (Title VII). Ray's claimed adverse employment actions are largely devoid of dates. For the purposes of the instant motion, the actions are presumed timely.

Ray alleges defendants took adverse employment actions against her because she was African-American and that defendants "did not treat other employees . . . in this derogatory manner." (Am. Compl. at 6, ¶¶ 15–16.) "A showing of disparate treatment – that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group – is a recognized method of raising an inference of discrimination . . . ." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (internal quotation marks and citation omitted). "To establish an inference of discrimination, a plaintiff must allege that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014). In undertaking this analysis, courts generally look to whether a plaintiff and her comparators were (1) "subject to the same performance evaluation and discipline standards" and (2) "engaged in comparable conduct." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). "[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical." *Id.*; *see also Ruiz v. Cty. of Rockland*, 609 F.3d 486, 493–94 (2d Cir. 2010).

In her amended complaint, Ray provides the race and gender of the other Dean's Office staff members: three Hispanic men, and one man and one woman "who are [] person[s] of color from the island." (*Id.* at 6, ¶ 12.) Ray further alleges that Weit "did not treat other employees, aside from the two African-American teachers and [Ray], in this derogatory manner" and that Weit "treated [Ray] and the other African-American older women staff disrespectfully and singled out [Ray] for harsh treatment because they are African-American." (*Id.* at 6, ¶¶ 15–16.) These allegations are insufficient to plead disparate treatment.

First, Ray fails to allege that the other members of the Dean's Office staff were "subject to the same performance evaluation and discipline standards." *Graham*, 230 F.3d at 40. She additionally fails to plead the other members' job titles, supervisors, or any other facts from which the Court could infer such. *See, e.g.*, *Brown*, 756 F.3d at 230 (finding that plaintiff and two co-workers were similarly situated in their employment circumstances based on allegations that they worked in the same group and reported to the same supervisor).

Second, Ray fails to allege that the other members of the Dean's Office staff "engaged in comparable conduct." *Id.*; *see also Risco v. McHugh*, 868 F. Supp. 2d 75, 100 (S.D.N.Y. 2012) ("In addition to identifying similarly situated employees who are subject to the same performance evaluation and discipline standards, a plaintiff must also show that those employees engaged in acts of comparable seriousness but were not punished as severely as plaintiff."). Though she states that defendants "allow[ed] other employees to arrive late to work and shift[ed] their hours without consequence," she does not specify which employees were late, how late they were, or how often they were late. (Am. Compl. at 6, ¶ 6j.) *See Dooley v. Jetblue Airways Corp.*, No. 14-CV-4432, 2015 WL 1514955, at *3 (S.D.N.Y. Apr. 1, 2015) *aff'd in part, vacated in part, remanded,* 2015 WL 9261293 (2d Cir. Dec. 18, 2015) ("The Amended Complaint provides no information about their tenure, rank, or performance evaluation . . . , and, perhaps most importantly, gives no indication that, like Plaintiff, they had history of prior questionable absences from work."); *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 408 (S.D.N.Y. 2014) ("Without factual amplification, the generic allegation of disparate treatment related to an unspecified class of Caucasian persons is . . . insufficient to support her racial discrimination claim.").

Ray's allegation that she "witnessed Mr. Weit being rude to and treating badly the only other two African-American women over age 40 in the school" is similarly unhelpful to her claim. (Am. Compl. at 6, ¶ 14.) Being mean or rude is not an adverse employment action as it is not "a materially adverse change in the conditions of [the emloyees'] employment." *Id.* at 409 (finding that "racially discriminatory comments" that were not "causally connected to conduct rising to the level of an adverse employment action" were not actionable).

Ray alleges no facts "that could be viewed as reflecting a discriminatory animus" or that suggest that similarly situated non-African-American employees were given preferential treatment. *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007). Ray invokes Title VII and alleges in a conclusory manner that she suffered adverse employment actions *because* she was African-American. This is insufficient. *See id.*; *Henry*, 18 F. Supp. 3d at 409; *Manolov v. Borough of Manhattan Cmty. Coll.*, 952 F. Supp. 2d 522, 527 (S.D.N.Y. 2013). Absent any alleged connection between Ray's race and defendants' actions, the amended complaint does not, as is required to withstand a motion to dismiss, provide defendants with fair notice of the grounds upon which Ray's Title VII claims rest. *See Iqbal*, 556 U.S. at 698; *see also Murphy*, 2011 WL 5976082, at *5. Because Ray fails to plausibly allege that her race "was a motivating factor in the employment decision," Ray's Title VII claims are dismissed. *Vega*, 801 F.3d at 87.

## III. ADA Discrimination Claims

The ADA provides that no covered entity "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). It further defines "discriminate" to include failure to make "reasonable

10

accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). Ray alleges disability discrimination in her suspension and treatment, as well as failure to accommodate her disability.

To prove a claim for discrimination under the ADA, a plaintiff must show that: (1) her employer is subject to the ADA; (2) she was disabled within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) she suffered adverse employment action because of her disability. *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013). A plaintiff is not required to make out a *prima facie* case in order to survive a motion to dismiss; however, the elements are instructive in analyzing whether a plaintiff has sufficiently plead facts that give rise to such a claim. *Liss v. Nassau Cty.*, 425 F. Supp. 2d 335, 340 (E.D.N.Y. 2006).

To prove a claim for failure to accommodate under the ADA, a plaintiff must show that: (1) she is disabled within the meaning of the ADA; (2) an employer subject to the ADA had notice of her disability; (3) she could perform the essential functions of her job with reasonable accommodations; and (4) her employer refused to make such accommodations. *Id.* (citing *Lyons v. Legal Aid Soc.*, 68 F.3d 1512, 1515–16 (2d Cir. 1995)). "As noted above, to defeat a motion to dismiss for failure to state a claim it is not necessary for the plaintiff to plead every element of a prima facie case" to survive a motion to dismiss. *Id.*

Although Ray does not allege that defendants are covered by the ADA, defendants do not contest that they are subject to the ADA. Likewise, defendants do not contest that Ray was otherwise qualified to perform the essential functions of her job. However, Ray fails to

sufficiently plead facts to show that she is disabled by her visual impairment, podiatric impairment, or asthma. As such, Ray may not claim protection under the ADA. Furthermore, even if Ray could sufficiently plead a disability, she fails to allege any facts from which the Court could infer that defendants took adverse actions against her because of her disability. Therefore, Ray fails to state a claim upon which relief may be granted.

### a. Ray Fails to Allege a Disability

A plaintiff must be deemed disabled under the ADA's standard in order to invoke its protections. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Major life activities" include, but are not limited to:

> caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working . . . [as well as] the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

42 U.S.C. § 12102(2). In determining whether an impairment "substantially limits" a major life activity, the Second Circuit looks to EEOC regulations. *See, e.g.*, *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 870 (2d Cir. 1998); *Delgado v. Triborough Bridge & Tunnel Auth.*, 485 F. Supp. 2d 453, 459–60 (S.D.N.Y. 2007). Under such regulations, an impairment meets this standard if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). The regulations further counsel that in determining whether an impairment substantially limits a major life activity:

> (i) . . . [i]t may be useful in appropriate cases to consider, as compared to most people in the general population, the condition under which the individual performs the major life activity; the manner in which the individual performs the major life activity; and/or the duration of time it takes the individual to

perform the major life activity, or for which the individual can perform the major life activity.

(ii) Consideration of facts such as condition, manner, or duration may include, among other things, consideration of the difficulty, effort, or time required to perform a major life activity; pain experienced when performing a major life activity; the length of time a major life activity can be performed; and/or the way an impairment affects the operation of a major bodily function. In addition, the non-ameliorative effects of mitigating measures, such as negative side effects of medication or burdens associated with following a particular treatment regimen, may be considered when determining whether an individual's impairment substantially limits a major life activity.

29 C.F.R. § 1630.2(4).

Ray's identifies "vision, asthma, [and] foot problems" as her disabilities. (Am. Compl. at 3.) Ray fails to allege facts regarding the effect or severity of her alleged disabilities that indicate whether they restrict any major life activity to the extent required under the ADA.

### i. Ray's Visual Impairment

Ray alleges that she "suffered from vision impairment . . . leading to a diagnosis of cataracts and a need for cataract surgery," of which defendants were aware. (Am. Compl. at 7, ¶¶ 19, 21.) In her opposition papers, Ray elaborates that as a result of her cataracts she "was 99% blind in one eye." (Pl.'s Opp'n at 4 (ECF Pagination).) She further alleges that "[a]s a result of her vision impairment, it became difficult for [Ray] to see enough to navigate her way to work in the early mornings before the sun rose." (Am. Compl. at 7, ¶ 20.) This "caused her to arrive late to work some mornings." (*Id.* at 7, ¶ 22.)

"[P]eople with monocular vision 'ordinarily' will meet the Act's definition of disability." *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999). However, "the Act requires monocular individuals, like others claiming the Act's protection, to prove a disability by offering evidence that the extent of the limitation in terms of their own experience, as in loss of depth perception and visual field, is substantial." *Id.* Ray has alleged that she was nearly blind in one

13

eye. However, Ray has alleged no facts as to the manner or duration of her visual impairment nor has she indicated that it restricts a major life activity to the extent required by the ADA.

Ray solely alleges that her visual impairment caused her to be late to work *some* mornings. Though work itself can be considered a major life activity, Ray has not adequately pleaded that, at the time of the alleged ADA violation, her ability to work was substantially limited by her alleged vision impairment.[4] Additionally, commuting to work itself is not a major life activity. *See* Menes *v. CUNY University of New York*, 92 F.Supp.2d 294, 303 (S.D.N.Y. 2000) (declining to recognize commuting to work as a major life activity); *see also Mondaine v. Am. Drug Stores, Inc.*, 408 F. Supp. 2d 1169, 1200 (D. Kan. 2006) (finding that requiring additional time to travel at night on *some* occasions was insufficient to allege a disability due to glaucoma under the ADA). Accordingly, Ray has failed to plead a visual disability.

### ii. Ray's Podiatric Condition

Ray alleges that "foot problems . . . made walking, climbing stairs, and prolonged standing more difficult." (Am. Compl. at 7, ¶ 24.) Walking and standing are major life activities. 42 U.S.C. § 12102(2). Though there appears to be conflict within the Second Circuit, this Court has previously held that "climbing stairs is not significant enough to fall within the short list of functions that constitute major life activities." *Addoo v. New York City Bd. of Educ.*, No. 04-CV-2255, 2006 WL 5838977, at *6 (E.D.N.Y. Dec. 18, 2006). *But see Sussle v. Sirina Prot. Sys. Corp.*, 269 F. Supp. 2d 285, 299 (S.D.N.Y. 2003) ("Climbing stairs likewise qualifies as a major life activity."). Thus the Court focuses solely on Ray's ability to walk and stand.

---

[4] The Supreme Court has held that, "[w]hen the major life activity under consideration is that of working . . . , 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Sutton v. United Air Lines,* 527 U.S. 471, 491 (1999)). In addition, for a person to be "substantially limited" in the major life activity of work, the person must be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.* (internal citation omitted).

14

Ray alleges no facts as to the nature of her podiatric condition or the extent to which it limits her ability to walk and stand.  Ray fails to allege that her podiatric condition was anything more than a temporary, non-serious injury.  *See Cook v. Deloitte & Touche, LLP*, No. 03-CV-3926, 2005 WL 2429422, at *10 (S.D.N.Y. Sept. 30, 2005) *aff'd,* 198 F. App'x 107 (2d Cir. 2006) ("The case law in this Circuit uniformly holds that persons do not have a 'disability' within the meaning of the ADA if their medical conditions are temporary.").  Ray fails to even allege that it substantially limited her ability to walk or stand; she merely alleges difficulty in doing so.  In fact, it appears from the amended complaint that Ray was able to continue performing her job even when it involved walking further distances and using the stairs rather than the elevator.  (Am. Compl. at 5, ¶ 6c–d.)  *See Cavallaro v. Corning Inc.*, 93 F. Supp. 2d 334, 343 (W.D.N.Y. 2000) ("Cavallaro first claims that he has an impairment that limits him in the major life activity of walking. He has failed, however, to demonstrate that any impairment he may have, if indeed he even has one, *substantially* limits his walking.") (collecting cases); *Brower v. Cont'l Airlines, Inc.*, 62 F. Supp. 2d 896, 904 (E.D.N.Y. 1999) (finding that the plaintiff was not disabled under the ADA where she argued "her ability to stand and walk are substantially limited by her degenerative foot condition" and "submitted an expert's report that stated that 'the current state of her feet will not allow any extended walking or standing.'") (collecting cases).  As such, Ray fails to sufficiently plead a podiatric disability.

   **iii.**  **Ray's Asthma**

Ray alleges that she "suffers from asthma," which was aggravated by her assignment to a "cold, damp hallway." (Am. Compl. at 7, ¶¶ 18, 26.)  Breathing is unquestionably a major life activity.  However, even construing Ray's pleadings liberally, she has set forth no facts regarding the extent to which her breathing was affected by her asthma.  *See Burke v. Niagara Mohawk*

15

*Power Corp.*, 142 F. App'x 527, 529 (2d Cir. 2005) ("[A]sthma does not invariably impair a major life activity."). Ray makes no allegations that her asthma was severe or uncontrolled. She merely states that is was aggravated in one particular location. *See Gomez v. Laidlaw Transit, Inc.*, 455 F. Supp. 2d 81, 86–87 (D. Conn. 2006) (explaining that where asthma symptoms occur only in certain environments an asthmatic plaintiff is not disabled under the ADA) (collecting cases). This is insufficient to survive a motion to dismiss. *See Boyce v. New York City Mission Soc'y*, 963 F. Supp. 290, 297 (S.D.N.Y. 1997) (finding that a plaintiff's assertions that she suffered from "shortness of breath and chest pains" did not satisfy basic pleading requirements of ADA claim, where the condition could "not be classified as severe, nor [could] the duration of such a condition be expected to have any permanent or long-term impact"). As such, Ray fails to allege she is disabled by her asthma.

### b. Ray Fails to Allege She Suffered Adverse Employment Action Because of her Disability

Even if Ray could sufficiently plead a disability under the ADA, she fails to allege facts from which the Court can infer that she suffered adverse employment action because of her disability. Ray argues "[d]efendants took adverse employment action against [Ray] because of her medical problems" and goes on to list various adverse employment actions. (Am. Compl. at 7, ¶ 26.) For example, she lists her assignment "to work in a cold, damp hallway that aggravated her asthma," her assignment "to a location that required her to go up and down stairs," and the reassignment of locker space to several new locations. (*Id.*) In no instance does Ray allege that defendants were motivated by knowledge of her disability. Ray merely states in a conclusory fashion that these actions occurred *because* of her disability. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation," and it will not do so here. *Twombly*. 550 U.S. at 555 (internal quotation and citation omitted).

Ray alleges no more than that she was disabled and that certain adverse employment actions occurred. This Court previously found that "Ray has failed to allege any basis to infer that she was treated differently *because* of her disability. Ray's claim fails to set forth a sufficient causal connection between her disability and any adverse employment action." (3/20/15 Order at 11.) Ray fails to cure this deficiency in the Amended Complaint. Accordingly, Ray's ADA claims are dismissed.

## IV.  Leave to Amend Would Be Futile

Federal Rule of Civil Procedure 15(a) contemplates that courts should "freely give leave [to amend] when justice so requires." This standard, flexible to begin with, is further liberalized for *pro se* plaintiffs. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Yet even under this broad standard, the Court maintains its discretion to deny leave to amend "in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 125–26 (2d Cir. 2008) (citation omitted).

In this case, Ray has already been given leave to amend. Her amended complaint is not only almost entirely devoid of dates and factual specificity, but it contains no allegations from which the Court can link defendants' conduct to Ray's race, gender, or alleged disability. Ray's amended complaint is not simply unartfully plead – it lacks the substance required to pursue claims under Title VII and the ADA. Ray has failed to cure the deficiencies in her original complaint. Thus, leave to amend for a second time would be futile.

## CONCLUSION

For the foregoing reasons, defendants' Motion to Dismiss, (Doc. No. 30), is granted. The Clerk of Court is directed to mail a copy of this Memorandum and Order and accompanying Judgment to the plaintiff *pro se* and note such mailing on the docket.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
March 28, 2016

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge